People v Campbell (2021 NY Slip Op 04255)





People v Campbell


2021 NY Slip Op 04255


Decided on July 8, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 8, 2021

109695
[*1]The People of the State of New York, Respondent,
v
Bruce Campbell, Also Known as Animal, Appellant.

Calendar Date:June 3, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Timothy S. Brennan, Schenectady, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the County Court of Schenectady County (Sira, J.), rendered April 7, 2017, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal use of a firearm in the first degree (two counts), criminal possession of a weapon in the second degree (two counts), aggravated criminal possession of a weapon and tampering with physical evidence.
In March 2016, defendant was charged in a nine-count indictment with attempted murder in the second degree, assault in the first degree, two counts of criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the second degree, aggravated criminal possession of a weapon, criminal possession of a weapon in the third degree and tampering with physical evidence stemming from allegations that, on April 7, 2015, he shot the victim on Webster Street in the City of Schenectady, Schenectady County. Following a jury trial, defendant was acquitted of attempted murder in the second degree, and convicted of assault in the first degree, two counts of criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the second degree, aggravated criminal possession of a weapon and tampering with physical evidence.[FN1] County Court denied defendant's motion to set aside the verdict pursuant to CPL 330.30. Defendant was thereafter sentenced, as a second felony offender, to prison terms of 20 years, followed by five years of postrelease supervision, for his conviction of assault in the first degree (count 2), five years, followed by five years of postrelease supervision, for each conviction of criminal use of a firearm in the first degree (counts 3 and 4), with the sentence on count 2 to run consecutively to the sentences on counts 3 and 4, and to lesser concurrent prison terms on the remaining convictions.[FN2] Defendant appeals.
Defendant contends that the jury's verdict is not supported by legally sufficient evidence and is against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Ferguson, 193 AD3d 1253, 1254 [2021] [internal quotation marks and citations omitted]; see People v Warner, 194 AD3d 1098, 1099 [2021]).[FN3] In contrast, when conducting a weight of the evidence review, "we view the evidence in a neutral light and determine whether a different verdict would have been unreasonable; if a different verdict would not have been unreasonable, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Ferguson, 193 AD3d at 1254; see People v Bleakley[*2], 69 NY2d 490, 495 [1987]).
The evidence at trial established that, on the afternoon of April 7, 2015, the victim walked from an apartment on Sixth Avenue in the City of Schenectady to get a juice and a snack at a convenience store located on the corner of Congress Street and Seventh Avenue. Unbeknownst to the victim, as he walked to the store, he was being stalked by a Toyota Corolla driven by David Fyall, with defendant a passenger in the rear seat. Various street cameras located in the area recorded the victim and simultaneously captured the Toyota as it tracked his route. As the victim approached the store, Fyall parked at the corner of Congress Street and Seventh Avenue and both he and the victim separately entered the store. Upon exiting the store, the victim proceeded to walk back to Sixth Avenue the same way he had come. Fyall exited the store moments later, quickly reentered the Toyota and thereafter drove to the corner of Webster Street and Sixth Avenue where he dropped defendant off. As the victim walked up Webster Street, defendant approached him from the opposite direction. Approximately half way down the street, defendant grabbed the victim's left arm and, while pointing a pistol at him, stated, "You know what it is." Believing he was being robbed, the victim pulled away and, as he did so, defendant shot him at point blank range in the stomach and fled on foot.
Although the victim did not see the shooter's face and could not identify him in a photo array, contrary to defendant's assertion, there was ample evidence presented at trial establishing his identity as the shooter. Street cameras corroborate Fyall's testimony that he dropped defendant off at the corner of Webster Street and Sixth Avenue just prior to the shooting.[FN4] Although defendant's face cannot be seen on these images, the person who exited the vehicle was wearing a black hooded sweatshirt, dark colored pants and white sneakers. Defendant's girlfriend confirmed that this person had the same build and "facial structure" as defendant and was wearing the exact same clothes that defendant had been wearing when he left her apartment earlier that morning. Following the shooting, the street cameras captured the shooter as he ran down Webster Street before ultimately losing track of him near the intersection of Congress Street and Hodgson Street. At the time of the shooting, defendant resided with his girlfriend at an apartment located at that same intersection. According to the girlfriend, when defendant returned to the apartment he was "nervous, sweating, jittery [and] pacing." He immediately grabbed a change of clothes from the bedroom, entered an abandoned apartment across the hall, burned the clothes that he had been wearing in the shower and then had the girlfriend re-braid his hair. In addition, three witnesses testified that, in the months following the shooting, defendant admitted to having shot the victim.
Based on the foregoing, and viewing the [*3]evidence in a light most favorable to the People, we find that there is "a valid line of reasoning and permissible inferences from which a rational juror could find that defendant was the shooter" (People v Banks, 181 AD3d 973, 975 [2020], lv denied 35 NY3d 1025 [2020]; see People v Maeweather, 172 AD3d 1646, 1648 [2019], lv denied 34 NY3d 1017 [2019]). Turning to the weight of the evidence, to the extent that defendant argues that Fyall and other witnesses had motivation to fabricate their testimony, said issues were explored during trial, were subject to cross-examination and posed credibility issues that were within the province of the jury to resolve (see People v Young, 190 AD3d 1087, 1092 [2021], lvs denied 36 NY3d 1100, 1102 [2021]). Accordingly, although another verdict would not have been unreasonable, viewing the evidence in a neutral light and giving deference to the jury's credibility determinations, we do not find the verdict to be against the weight of the evidence.
Next, County Court did not err in providing the jury with a consciousness of guilt instruction. The People established the requisite factual predicate to support such an instruction as the jury could reasonably infer from defendant's conduct following the shooting — e.g., burning the clothes, re-braiding his hair and subsequently attempting to assault Fyall when they were both incarcerated in the county jail — that said actions reflected a consciousness of guilt. Although the probative value of such evidence may be limited, it is nevertheless relevant and there was an adequate basis for County Court to provide the jury instruction (see People v Taylor, 140 AD3d 1738, 1739-1740 [2016]; People v Brown, 138 AD3d 1014, 1014 [2016], lv denied 27 NY3d 1129 [2016]; People v Raymond, 81 AD3d 1076, 1076-1077 [2011]; People v Young, 51 AD3d 1055, 1056-1057 [2008], lv denied 11 NY3d 796 [2008]).[FN5]
Defendant's contention that his judgment of conviction should be reversed due to the prejudicial effect of the People referencing him by his street name, Animal, is not preserved for review as he did not object to the use thereof at trial (see People v Wiggins, 170 AD3d 1204, 1205 [2019], lv denied 34 NY3d 939 [2019]). However, to the extent that defendant's general objection to the People's use of this street name following defense counsel's summation can be said to have properly preserved this argument, we nevertheless find it to be without merit. Defendant's street name was listed in the caption of the indictment, defendant did not move to strike it, the evidence at trial demonstrated that he was generally referred to by his street name in the community and the evidence was probative as to defendant's identity as the shooter such that, under the circumstances, we do not find the use thereof to be "so egregious as to deprive [him] of a fair trial" (People v Butts, 184 AD3d 660, 664 [2020]; see People v Rashid, 166 AD3d 1382, 1384 [2018], lv denied 32 NY3d 1208 [2019]).
Defendant [*4]next contends that the verdict should be vacated based upon County Court's erroneous rulings with respect to its dismissal of juror No. 11, failure to dismiss juror No. 9 and failure to sua sponte grant a mistrial based upon jury deadlock. Defendant's claim that County Court erred in dismissing juror No. 11, however, is unpreserved for review as it was defendant who requested that the court release this juror from service and no further objections were rendered in this regard (see People v Grimm, 107 AD3d 1040, 1041 [2013], lv denied 21 NY3d 1042 [2013]). Similarly, his contention that County Court erred in not dismissing juror No. 9 following the receipt of her note indicating that she "cannot take the pressure" and requesting to be released from service is unpreserved as County Court adequately consulted the parties with respect to the contents of the note and defendant's counsel consented to the manner in which County Court resolved the issue, without objection or a request for a mistrial (see People v Hicks, 6 NY3d 737, 739 [2005]; People v Stephens, 2 AD3d 888, 890 [2003], lvs denied 2 NY3d 739, 746 [2004]). Defendant's claim that County Court abused its discretion in not sua sponte granting a mistrial due to jury deadlock is also unpreserved to the extent that he alleges that the court erred in failing to grant his CPL 330.30 motion on this ground; nevertheless, we find said argument to be without merit (see People v Allen, 189 AD3d 463, 464 [2020], lv denied 36 NY3d 1055 [2021]; People v Tucker, 192 AD2d 469, 470 [1993]).
We find defendant's contention that he was denied the effective assistance of counsel to be unavailing. "[I]n order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted egregious and prejudicial error such that the defendant did not receive a fair trial. A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Stover, 178 AD3d 1138, 1147 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1163 [2020]; see People v Porter, 184 AD3d 1014, 1018 [2020], lv denied 35 NY3d 1069 [2020]). Importantly, defendant's counsel cannot be found to be ineffective for failing to present arguments "that ha[d] little or no chance of success" (People v Williams, 35 NY3d 24, 45 [2020]; see People v Rose, 185 AD3d 1228, 1232 [2020], lv denied 35 NY3d 1115 [2020]). Further, viewing his representation in its totality reveals that he made appropriate motions, set forth a clear trial strategy, effectively cross-examined witnesses, made cogent opening and closing statements and ultimately obtained an acquittal of the top count of the indictment charging defendant with attempted murder in the second degree such that we are satisfied that defendant received meaningful representation[*5](see People v Ruffin, 191 AD3d 1174, 1183 [2021], lv denied ___ NY3d ___ [May 24, 2021]; People v Barzee, 190 AD3d 1016, 1021 [2021], lv denied 36 NY3d 1094 [2021]).
Defendant's claim that the verdict should have been set aside based upon the People's alleged Brady violation in failing to disclose the criminal conviction of a witness is without merit.[FN6] Even assuming that the misdemeanor conviction of the subject witness — which was over 20 years old — was favorable to defendant as it was impeaching in nature (see People v Ulett, 33 NY3d 512, 515 [2019]), defendant concedes that this conviction was unknown to the People prior to it being disclosed before sentencing (see People v Williams, 182 AD3d 776, 780 n 1 [2020], lvs denied 35 NY3d 1070, 1071 [2020]). Moreover, even if the conviction had been timely disclosed, we do not find that there was a reasonable possibility that it would have changed the outcome of the proceeding (see People v Garrett, 23 NY3d 878, 885 [2014]; People v Wideman, 192 AD3d 1384, 1387 [2021]; People v Heimroth, 181 AD3d 967, 971-972 [2020], lv denied 35 NY3d 1027 [2020]).
We reject defendant's claim that the sentence imposed was harsh and excessive. Given defendant's criminal history, the serious nature of the crimes committed and the severe injuries sustained by the victim — which includes having a bullet lodged in his vertebrae due to the risk of paralysis should it be removed — we discern no abuse of discretion or extraordinary circumstances that would justify a reduction of the sentence in the interest of justice (see People v Burns, 188 AD3d 1438, 1443-1444 [2020], lvs denied 36 NY3d 1055, 1060 [2021]; People v Collier, 146 AD3d 1146, 1152 [2017], lv denied 30 NY3d 948 [2017]). To the extent not specifically addressed, defendant's remaining arguments have been reviewed and found to be without merit.
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: County Court previously dismissed, on consent of the parties, count 8 of the indictment charging defendant with criminal possession of a weapon in the third degree.

Footnote 2: County Court also ruled that defendant's sentence was to be served consecutively to any other sentence previously imposed against him.

Footnote 3: Defendant failed to preserve his contention that the evidence was legally insufficient to support his convictions because the testimony of his accomplice/codefendant was not adequately corroborated, as he did not raise this argument in his motion for a trial order of dismissal (see People v Larregui, 164 AD3d 1622, 1623 [2018], lv denied 32 NY3d 1126 [2018]). The sole ground preserved for review with respect to his legal insufficiency claim, therefore, is that the People failed to establish his identity as the shooter.

Footnote 4: Another witness who was parking her vehicle along Sixth Avenue also saw the subject Toyota stop at the intersection of Webster Street and Sixth Avenue and observed an individual exit the car.

Footnote 5: To the extent that defendant's broad challenge can also be construed as a challenge to the admission of the evidence underlying the consciousness of guilt instruction, he failed to object to the introduction of this evidence at trial and, therefore, this argument is unpreserved (see People v Santana, 179 AD3d 1299, 1302 [2020], lv denied 35 NY3d 973 [2020]).

Footnote 6: Although defendant's application was made pursuant to CPL 440.10 and was therefore premature, to the extent that this issue was raised before sentencing and County Court rendered a determination on the merits, we will address the issue as having been raised as part of defendant's CPL 330.30 motion (cf. People v Williams, 35 AD3d 1085, 1086 n 1 [2006]).